EDELSTEIN, Admr. v KIDWELL

Ohio Appeals. 2nd Dist, Franklin Co

No 3368. Decided July 18, 1941

D. Curtis Reed, Columbus; Joseph F. Hogan, Columbus, for plaintiff-appellee.

Alex S. Dombey, Columbus; George M. Austin, Columbus, for defendant-appellant.

## OPINION

By GEIGER, PJ.

The above-entitled cause is now being determined by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Plaintiff's action was predicated upon a death claim on behalf of herself, as sole surviving widow, and a young son, as sole surviving heirs of the decedent.

Plaintiff in her petition alleged that on August 14, 1939, at about ten A. M., deceased was riding on the right side of the driver's cab of a tractor trailer truck belonging to the defendant, proceeding in a southeasterly direction on Federal Route 35. The truck was then being driven by defendant's agent, Nelson Francis, and it is alleged that the decedent was being conveyed to Gallipolis and other points in Southern Ohio for the purchase by him of metal junk, to be transported for hire in defendant's said truck, to Columbus, Ohio. It is further alleged that the brakes on said truck then were and for several days past, within the knowledge of the defendant and the driver, Francis, had been defective, in that when suddenly and forcibly applied they would jam and lock one or more of the wheels. The petition contains the further allegation that while proceeding along said route, at about a place three miles southeasterly from the village of Thurman, said Francis, when attempting to slow down the truck in order to safely pass over a cement culvert and around a left hand curve, applied the brakes in such a manner as to cause the truck to swerve to the left and strike the culvert in such way that the trailer buckled with the tractor portion of the truck, causing it to run into the ditch beyond the culvert. The gasoline tank under the driver's seat struck the abutment and was broken open, causing a fire in the driver's cab, which inflicted such severe burns on the body and limbs of the deceased; that as a result thereof he died on December 29, 1939.

The deceased at the time of his death was thirty years of age.

Damage was prayed for in the sum of $30,000.00.

Defendant in his answer admitted that plaintiff was the widow of the deceased, and that she is administratrix of the estate, duly appointed by the Probate Court of Franklin County, Ohio. Also admits that at the time of the death of George Edelstein he was thirty years of age, and left surviving him the plaintiff and the son, one year old.

Further answering the defendant denies each and every allegation of the petition.

Through the evidence it develops that the sole controversy other than the amount of damages revolves around the question of the status of the decedent. Edelstein, in riding in defendant's truck. Was he lawfully riding in the truck, or was he a licensee, trespasser or guest?

At the close of plaintiff's testimony defendant interposed a motion for a

directed verdict, on the claimed ground that the evidence shows that the plaintiff's decedent was not riding with the permission of the defendant and was either a trespasser, licensee, or at the most, a guest. This motion being overruled by the trial court, was renewed at the close of all the testimony, and the same question was further presented following the verdict, asking for judgment in favor of the defendant notwithstanding the verdict.

At the close of all the testimony, the trial court, upon request of the plaintiff, directed the jury to return a verdict in favor of the plaintiff, but left for its determination the question of the amount of damages. The jury were charged on the question of the measure of damages.

A verdict was returned in the sum of $2500.00 in favor of the plaintiff.

Plaintiff filed a motion for new trial on the ground of the insufficiency of the amount of the verdict, and later filed an amended motion for a new trial, requesting that the verdict of the jury be vacated and a new trial granted solely upon the issue of the amount of damages found in said verdict.

The trial court overruled defendant's motion for a judgment in his favor notwithstanding the verdict.

On the same day the trial court sustained plaintiff's amended motion, finding that the verdict was grossly inadequate, that it was not sustained by sufficient evidence and that the same was manifestly against the weight of the evidence. The entry further contained the following:

"Wherefore said amended motion is hereby sustained and it is hereby ordered that a new trial be had solely upon the issue of the amount of damages to be awarded."

Within statutory time defendant gave notice of appeal on questions of law.

Defendant-appellant's assignments of error are set out in ten separately stated and numbered specifications.

We shall not follow the several assignments in the order set out, since appellant, in his brief, has not done so.

In natural order, the first question to be determined is whether or not the trial court was in error in not sustaining motion for a directed verdict in favor of defendant, and further in not entering judgment for defendant notwithstanding the verdict.

Of course, this court could only determine prejudicial error on this question in the event that the evidence considered in its most favorable light, for the verdict for plaintiff, would not warrant such a verdict. Again, the examination of this question to be determined requires a very careful analysis of the evidence as presented through the bill of exceptions.

Counsel for appellee raise the question that we have no authority to consider the bill of exceptions, since defendant did not file a motion for new trial. We are not in accord with this theory.

A bill of exceptions may be considered on all questions except the weight of the evidence. It is therefore proper for us to consider whether or not the evidence, most favorably considered, rejects the verdict in favor of the plaintiff.

We now present a resume of the uncontroverted questions:

The defendant, Marion Kidwell, on and before August 14, 1939, lived in Columbus, Ohio, and was a contract carrier and shipper, having a number of trucks and trailers with which he performed hauling services for such people as made contracts for such services.

On Saturday, August 12, and Sunday, August 13, 1939, the decedent, then in full life, contracted with the defendant to send two trailer trucks to Gallipolis, Ohio, or Charleston, West Virginia, for two loads of metal junk, which decedent had then contracted to buy. The defendant, Kidwell, did not drive his several trucks, but had available drivers whom he could secure on

call to make the trips as the occasion required.

Apparently no definite information was given or a definite description of the scrap metal or its exact location, which would enable the drivers to go directly and get the scrap metal, but it was arranged that Edelstein would go to the point of destination and there definitely locate the scrap metal for the drivers and thereafter could give instructions as to where it should be taken. The only witnesses called by the plaintiff on this question were the defendant Kidwell, for cross-examination, and the driver, Nelson Francis, for direct examination. The driver of the other truck making the trip was one Keith, but he was not called as a witness possibly due to the fact that at the time of the trial he was in New Jersey, or it may be that he knew no facts that would aid in the determination of the issues.

According to the testimony of both the defendant, Kidwell, and the driver, Francis, Mr. Edelstein was to take his own car and the drivers of the two trucks would trail him to the point of destination. The course of travel took the decedent and the two drivers into the City of Jackson, Ohio. At or near this point some engine trouble developed in decedent's automobile. The drivers of the trucks stopped at a filling station to fill up their tanks with gasoline. Apparently Mr. Nelson Francis was in charge of the trucks, since he had been given the expense money for the trip by the defendant, Kidwell. At this point the decedent, Mr. Edelstein, concluded to leave his automobile for repairs and then got in the truck on the seat alongside Mr. Francis. The latter testifies that he did not invite Mr. Edelstein to ride with him, nor did he deny him the right to do so. According to the testimony of Francis, the only thing said on the subject was by Mr. Edelstein: "I am going to ride with you and will get my car when we return."

From the City of Jackson the trucks proceeded towards the City of Gallipolis. When they had reached a point about three miles from the village of Thurman, the accident happened substantially as set out in the petition. At the time or immediately preceding the accident, the decedent was asleep. He had not in any way assisted in the operation of the truck from the time he entered it until the unfortunate accident happened. It is apparent from the testimony that Mr. Edelstein's only purpose in occupying the seat alongside the driver, Francis, was to get to his destination.

It was the holding of the trial court that this situation as disclosed from the evidence presented an emergency, and for that reason Mr. Edelstein was riding in the truck lawfully and entitled to be protected against negligence in its operation.

It was the view of the trial court that there was a mutual benefit to the decedent and to the defendant, Kidwell.

Through the examination of the driver, Francis, the latter testified that had not Edelstein accompanied him to Gallipolis, he and the other driver would have been compelled to return to Columbus without their load. It was further testified that under this situation a charge would have been made against Mr. Edelstein for one-half the load rate. Apparently the trial court accepted as conclusive this testimony of Mr. Francis that either Mr. Edelstein should ride with him or their trucks would return to Columbus empty.

The driver, Francis, testifies that he was familiar with the rule of the Public Utilities Commission prohibiting the transportation of passengers. It was in evidence that the defendant, Kidwell, had instructed his drivers, including Francis, generally, that they should not carry passengers.

The reason given by Francis, the driver, for permitting Edelstein to occupy the seat with him without objection, was the understanding given him by the defendant that Edelstein would go to their point of destination and point out the scrap to him, and that he had no other means of locating his cargo.

We might say at this point that the record presents no controversy as to the defective condition of the brakes and the knowledge of such condition both by the owner, Kidwell, and the driver, Francis.

The defendant, Kidwell, had arranged to purchase the truck from Mr. Edelstein about three weeks prior to the accident. According to the testimony, the brakes were defective at the time the truck was received. There is a conflict in the testimony between the defendant, Kidwell, and the driver, Francis, as to what arrangements had been made to repair the defects, but this is immaterial. The driver, Francis, in his testimony supports the allegation of the petition that the cause of the accident was this defective condition of the brakes.

Counsel for defendant advance the theory that since the transfer of title had not been completed from Edelstein to Kidwell that this alone should relieve Kidwell of responsibility. We have no difficulty in arriving at ▇▇▇▇▇ the conclusion that this claim is not well founded. It is unquestioned that the truck was in Kidwell's control and possession, operated by his agent, and the question of title ownership is immaterial.

We now return to the all important question, and that is the ▇▇▇▇▇ status of plaintiff's decedent at the time he was riding with Francis in the truck.

At the trial of the case the Court charged the jury that the plaintiff had made a motion that the Court instruct the jury to return a verdict in favor of the plaintiff on the question of the defendant's liability, and submit the case to the jury solely upon the question of the amount of damages or compensation which the plaintiff is entitled to recover.

The Court then gives a clear analysis of the evidence, and as we believe a correct statement of the law. The Court was so explicit in his charge to the jury that we deem it but a waste of time to reiterate, inasmuch as we are in accord with all that he says.

However, we will give his findings as a matter of law, as they refer to the evidence and as then stated to the jury:

"The court therefore finds as a matter of law that under the uncontroverted evidence in this case Francis, the driver of the truck involved in the accident, was the employee of Kidwell and under the control of Kidwell at all times during the trip in question."

"The court therefore finds under the evidence in this case as a matter of law that there was a benefit running to Kidwell, and that Edelstein's getting in the truck and proceeding with the trucks was in the furtherance of Kidwell's business, and that therefore as a matter of law Edelstein was not a guest but was in the truck in the furtherance of the business of the defendant, Kidwell, so that the trip would not have to be abandoned, and that that is true as a matter of law even though there was an incidental benefit running to Edelstein himself."

"The court therefore finds as a matter of law that Francis, the driver and the employee of Kidwell, acting within the scope of his employment and in the furtherance of his master's business, that is of Kidwell's business, tacitly consented to Edelstein's entering and riding in the truck under the circumstances, to-wit, that Edelstein's car had broken down and had to be left behind and that the trip would have to be abandoned unless Edelstein in some manner accompanied the trucks to show them what to do. * * * "

" * * * the court finds as a matter of law that the defendant through his employee, Francis, and through his own knowledge of the condition of the brakes, was guilty of negligence, and that that negligence was the proximate cause of the injuries to the deceased."

The Court stated to the jury in substance, that he sustains the motion of the plaintiff and directs the jury to return a verdict for the plaintiff and complies with the request of the plaintiff that the Court submit to the jury

the sole issue of the amount of damages which the plaintiff is entitled to receive by way of the compensation for the benefit of the next of kin of the deceased.

Afterwards, motions were filed by each party, and the Court charged the jury upon the sole question of the amount of damages. The jury brought in a verdict in favor of the plaintiff for $2,500.00.

The defendant, Kidwell, moved the Court for a judgment in his favor notwithstanding the verdict rendered in favor of the plaintiff, on the grounds stated.

The plaintiff moved the Court to vacate the verdict of the jury and grant a new trial solely upon the issue of the amount of the damages found in said verdict, for the reasons stated.

Thereupon, the Court overruled the motion of the defendant for judgment and sustained the motion of the plaintiff for a new trial solely upon the issue of the amount of damages to be awarded, as shown by the entry filed herein.

As before stated, the Court is so impressed with the soundness of the reasoning of the trial Court in his charge to the jury that we are of the opinion that it can not be better stated, and we, therefor, sustain the judgment of the Court below.

The statute requires a reviewing court to pass on all errors and for that reason and that alone, we briefly consider the other assigned errors.

In this field, the error most seriously complained of is the order of the trial court sustaining amended motion for new trial and ordering new trial limited to the question of the determination of damages. It will be remembered that the trial court directed the jury to return a verdict in favor of the plaintiff, and left nothing for their consideration except the determination of the amount of the verdict.

In sustaining the motion for new trial it was the view of the trial court that the amount was grossly inadequate.

There is no question of the right of the trial court to grand a new trial on the grounds of the insufficiency of the amount of damages.

To grant a new trial and limit the rehearing to a single issue is a new procedure in Ohio, upon which the courts of this state have made no pronouncement. We are referred to texts built from reported cases in other states supporting the rule of permitting on new trial the resubmission of a single issue under certain circumstances. Citations given us are the following:

20 Ruling Case Law, page 321;

2 Ruling Case Law, page 287;

98 American Law Reports, Annotated, 941;

46 Corpus Juris, page 74;

57 L. R. A. (1915 E.) 240, 250;

27 American and English Cases, Annotated, (1913 B) 365;

Gasoline Products Co. v Champlin Refining Co., 283 U. S. 484;

Yazoo Railway Co. v Scott, 108 Miss. 871; (67 S. 49).

From a careful reading of the above citations, we are inclined to think that the weight of authority supports a limited trial, where the evidence on all other issues is conclusive and not so connected with the issue to be retried as to be unfair to either party.

We do not consider it erroneous for the trial court to limit the new trial to certain issues, in this case where the evidence on the issues not retried is conclusive and no prejudice will inure to either side by reason of the limited retrial.

Applying this principle to the instant case, we are of the opinion that the trial court was not in error in ordering a limited new trial.

Another claimed error was the refusal of the court to admit in evidence defendant's proffered Exhibit D, which was Section 10 of the printed rules of the Public Utilities Commission of Ohio. This Section 10 is copied in its entirety on earlier pages of this opinion. Properly adopted rules are accepted as law.

There is no necessity to introduce such rules in evidence, although it is the general practice. The reason that it is not necessary to introduce such rules in evidence is that courts are bound to take judicial notice of such rules. **Duncan v Evans, 60 Oh Ap 365.**

For this reason it can not be said that the court erred in refusing to admit in evidence Rule 10. However, being pertinent it was in the case, just as pertinent statutory law is in the case. Proper rules of administrative bodies, just like sections of the Code, are presented to the jury through proper instructions of the court.

All other claimed errors are so connected with those already discussed that it is not necessary to give special attention to them.

Entry of final judgment may be prepared in accordance with this decision.

HORNBECK, J., concurs.

BARNES, J., Dissents:

It is with regret that I find myself unable to agree with the majority opinion.

In my judgment the applicable law under the factual conditions existing as presented through the record demands a finding and judgment for the defendant. In my opinion we should find prejudicial error on the part of the trial court in not sustaining defendant's motion for directed verdict at the close of plaintiff's evidence, renewed at the termination of all the testimony and further presented on motion to enter final judgment notwithstanding the verdict. I think the applicable law so requires under any contract for hauling, but additional reasons are presented in the instant case when it was shown that the defendant was a permit-holder of an order issued by the Public Utilities Commission of Ohio and thereby was subject to the duly enacted rules by the Commission.

Rule 10 of such rules reads as follows:

"10. NO PASSENGERS.—No person except the carrier, employees of the carrier, representatives of the shipper when their presence is necessary for the safe care of live stock, representatives of the Commission, or public officials in the proper performance of their duties, shall be transported upon any motor vehicle; provided, however, that each person permitted by this paragraph to be transported upon such motor vehicle, except those engaged in the actual operation of the vehicle, shall have printed or written authority therefor from the carrier."

Rule 1 of the regulations provides that drivers for motor transportation company shall be conversant with the adopted rules and subject themselves to suspension or discharge if guilty of violation.

The driver Francis testifies that he was familiar with the rule prohibiting the transportation of passengers. It was in evidence that the defendant, Kidwell, had instructed his drivers, including Francis, that they should not carry passengers. The only reason given by Francis, the driver, for permitting Edelstein to occupy the seat with him without objection was the information given him by the defendant that Edelstein would go to their point of destination and point out the scrap to him to be transported.

The leading case in Ohio which states the general rule is **Electric Company v Krause, 123 Oh St 81.** Syllabi 1 and 2 read as follows:

"1. The owner of an automobile being driven by a servant in the business of the owner within the scope of the servant's employment is not liable for damages to a guest of the servant for injuries caused to such guest by the negligence of the servant while riding in the automobile without the knowledge and consent of the owner, it not appearing that such guest is at the time rendering necessary assistance to the servant within the scope of his employment.

2. Where the owner of an automobile entrusts the same to a servant in the course of the business of the owner, without authority to carry passengers, a guest of the servant riding in the automobile is neither an invitee nor a licensee of the owner, but on the contrary is a trespasser to whom no duty is owing by the owner, except not to wilfully injure him."

The all-important question is whether or not plaintiff's decedent comes within the exceptions to the general rule. Counsel for plaintiff in their brief cite numerous cases and quote therefrom, but many of these cases lend us no aid for the reason that they deal with situations where the owner of the vehicle is the operator, and it at once appears that under such situation the entire field of liability is not covered.

Counsel for plaintiff at pages 10 to 13, inclusive, of their brief, cite authorities claimed to be determinative.

The first case cited is that of **Krull v Dairy Company, 59 Oh Ap 107.** The first syllabus reads as follows:.

"1. Where a person is on a truck belonging to a company, at the invitation of the company's driver, for some purpose and benefit to himself in addition to assisting the driver in the performance of his duties for the company, with the consent of the company and without knowledge of any rule prohibiting his employment by the driver, such person is neither a trespasser, a volunteer, nor a servant of the company, but is there by sufferance and is entitled to be protected from the negligence of the defendant's servants."

This cited case is to be distinguished in that the above quoted syllabus presents the following facts not present in the instant case:

1. The injured person was in the truck at the invitation of the company's driver.

2. For the purpose of assisting the driver in the performance of his duties for the company.

3. With the consent of the company and without knowledge of any rule prohibiting his employment by the driver.

In the instant case plaintiff's decedent was not in the truck at the invitation of the driver; he was not assisting the driver in the performance of his duties; he was not in the truck with the consent of the owner; he was in the truck in direct violation of Rule 10 of the Public Utilities Commission.

Reference is also made to the case of **Cleveland Terminal & Valley Railroad Company v Marsh, 63 Oh St 236.** Syllabus 3 reads as follows:

"3. One who is invited by a servant of a corporation in charge of its work or service to assist him therein, and does so with some purpose or benefit to be subserved in his own behalf in addition to the purpose of so assisting, is not a volunteer and is entitled while so assisting, to be protected against the negligence of the servant of the company."

Again, this case is to be distinguished in that the injured person in the reported case had been employed by servants of the corporation to do certain daily service for which he was paid.

The next case is **Ohm v Miller, 31 Oh Ap 446.** In this reported case the injured person, on invitation of the driver of a vehicle belonging to the master, was assisting in backing the truck into a garage and during the operation was injured. Under the facts of the case the Court held there was an emergency confronting the driver in getting his truck and cargo under cover to prevent damage from an impending storm. I am unable to see that this case is comparable to the instant case.

The next case is **Street Railway Co. v Bolton, 43 Oh. St 224.**

In this case the injured person was a passenger on defendant's street railroad, traveling northwardly. The railway was a single track, with occasional side tracks for the passage of cars mov-

ing in opposite directions. A north-bound car, having been drawn beyond the sidetrack where it was to have met a southbound car, it became necessary to push it back to the sidetrack so that the cars could pass and proceed to their destination. At the request of the driver of the northbound car plaintiff assisted in pushing the car back to the track. While so engaged, without fault on his part, he was injured by the negligence of the driver of the southbound car. It was held that the plaintiff was not engaged in the service of defendant as a mere volunteer.

I think the distinguishing features to the instant case are apparent.

The next case cited is that of **Jarman v Youngstown Hide & Tallow Co., 15 Abs 380.** The syllabus in this case is as follows:

"The owner of an automobile being driven by a servant in the business of the owner within the scope of the servant's employment is not liable for damages to a guest of the servant for injuries caused to such guest by the negligence of the servant while riding in the automobile without the knowledge and consent of the owner, where it does not appear that such case was at the time rendering necessary assistance to the servant within the scope of his employment."

It at once appears that there is nothing in the above-quoted syllabus helpful to appellee's cause. Reference is made to a statement of Judge Pollock in the opinion as follows:

"It might have been a different proposition in this case if, when the driver of the automobile had driven to where he was to load carcasses, he could not load them and found that he had to call in some one in such emergency and the injury had occurred while he was assisting. That would be a different proposition, but this young man was taking a ride, going a dis-tance of possibly fifty miles, and was riding along the public highway in this automobile, at the time rendering no assistance."

I am unable to conclude that either on the authority of the cited cases or on reason, that plaintiff's decedent in the instant case was included in the exceptions to the general rule. It seems to me that plaintiff's decedent was in the same position as a person who boards a railroad train without a ticket and refuses to pay his fare. The mere fact that the ones in charge do not stop the train and put him off would not change his position from that of a trespasser to a passenger. The only duty owing him would be to not wilfully or wantonly injure him.

In the instant case it might be concluded that common courtesy would prompt the driver to impliedly consent to plaintiff's decedent to ride with him, since it was known that the decedent had something to do with procuring their cargo at the point of destination. This sounds reasonable, but in the face of the instructions from his master and in violation of the known rules of the Public Utilities Commission, was he authorized under the law to extend such courtesy? Every occupant of a motor vehicle is a liability risk. Does not the law say that this additional risk may not be imposed upon the master by the servant without his knowledge and consent? There is no evidence in the record that the driver either invited or consented to plaintiff's decedent riding in the truck. It was the opinion of the trial court, concurred in by the majority in this court, that there was an implied consent due to the fact that otherwise the drivers of the two trucks would have been compelled to return to Columbus without their cargo. Even under the emergency theory it must be conceded that there was no emergency so far as the defendant was concerned. An emergency did present itself to plaintiff's decedent. It is a matter of common knowledge that he could have continued his journey to the point of destination through other

means of transportation. He chose on his own invitation to occupy a seat alongside the driver on defendant's truck. Under such situation he assumed the risk and no liability attached against the defendant except to refrain from wilfully or wantonly injuring him. Under Rule 10 of the Commission, above quoted, the defendant owner had no right to transport the plaintiff's decedent. The driver of the truck was familiar with the rule and thereby knew that he had no right to invite the plaintiff decedent to ride in the truck. In addition, the driver testified that he had express instructions from his employer not to carry passengers.

The principle of law is well recognized that the burden is on the plaintiff to prove that any actionable conduct on the part of the driver was within the scope of his authority.

If under Rule 10 in connection with direct instructions not to carry passengers there would be no authority on the part of the driver to invite plaintiff's decedent to ride, how can it be said that an invitation would be implied?

A case very similar in its facts to the instant case is that of Te Selle v Terpstra (Wash.), 38 Pac. 2d. 379. Syllabus 1 reads as follows:

"One who hired another's truck to transport his furniture and who, with driver's consent, and without any agreement for payment for his own transportation. rode with the driver, held, mere guest for whose death in accident driver was not liable in absence of gross negligence."

Through reading the above syllabus it might be inferred that the action was against the driver of the truck and not the owner. A reading of the statement of the case will disclose that the owner and driver were one and the same person. In this Washington case there is nothing to indicate that the owner of the truck was operating under a permit order as was the situation in the instant case. From this it follows that the instant case presents a stronger reason for adopting the rule announced in the Washington case.

I also dissent from the majority opinion in sustaining the trial court in granting a new trial to plaintiff for the sole purpose of determining the amount of damages. In so doing it must be understood that I am not in any sense receding from my former position that final judgment should be entered against the plaintiff.

## ON RECONSIDERATION OF FORMER RULING

No 3368. Decided July 29, 1941

BY THE COURT:

The appellant moves for reconsideration of our former ruling with respect to limiting the granting of a new trial to a single issue, namely, reassessment of the damages only.

We hold in our decision that the order of the trial judge granting the new trial and limiting it only to a consideration of the damages to be awarded the administratrix was not prejudicially erroneous.

We do not want to be understood, nor do we say, that the trial judge, when this cause comes on again for trial, could not permit, if sufficient reasons appear, the defendant to amend his answer and to make the defense therein set forth an issue for the consideration of the jury. In remanding the cause the entry may provide for modification of the judgment entry in the Common Pleas Court which will enable that court to use its discretion, if an amended answer is tendered, in determining whether or not a new trial should proceed upon another or further issues which is not made by the pleadings before us in this appeal.

GEIGER, PJ. & HORNBECK, J, concur.
BARNES, J., dissents.