**ANGEL, Admx., Plaintiff-Appellee v. CONSTABLE, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1738.   Decided February 8, 1943.

2

Jacobson & Durst, Dayton, for plaintiff-appellee.

Matthews, Matthews & Altick, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment for the plaintiff against the defendant in the sum of $13,900.00, entered upon a special verdict of the jury in the sum of $18,500.00 upon which a remittitur was ordered in the amount of $4,600. Eight errors are assigned.

1. In overruling appellant's motion for a directed verdict.
2. In charging the jury.

3. Misconduct of counsel for plaintiff in argument to jury.

4. Damages assessed by the jury grossly excessive.

5. Given under the influence of passion and prejudice.

6. In overruling defendant's motion for judgment notwithstanding the special verdict.

7. In sustaining motion for plaintiff for judgment on special verdict.

8. In overruling defendant's motion for a new trial.

The action was for damages for the wrongful death of plaintiff's decedent claimed to have been caused by the wrongful act of defendant in the operation of his automobile on the night of February 20, 1941. The issues were raised by an amended petition and answer thereto. The amended petition avers and the record establishes that Charles Angel, plaintiff's decedent, on and prior to February 20, 1941, was in the employ of Mulford's Greenhouse, Dayton, Ohio, of which greenhouse the defendant was the manager and had control and supervision over decedent. On February 20, 1941, as had been the frequent practice of decedent, he reported to work at 7:30 A. M. His regular quitting time was 5:00 P. M. with thirty minutes off for lunch. On this day the business of the greenhouse being especially heavy, plaintiff's decedent was requested to work overtime in the evening. The practice in this situation was for decedent to take thirty minutes off for lunch about 7:00 P. M. and return to greenhouse for extra service. His practice when he worked overtime was either to walk to and from the nearest restaurant, about one-half mile away from the plant, for his evening lunch which was generally paid for by his employer, or to ride with defendant who would let decedent off at his home and pick him up later and return him to the plant. It was the claim of the plaintiff and found by the jury that defendant directed plaintiff's decedent to enter his car and accompany him to decedent's home. Two young women employees were also working overtime on the day in question and it is testified that when their regular work was completed at 3:00 P. M. they were told that if they would do overtime work defendant would take them to their homes and they were with the defendant and plaintiff's decedent at the time of the automobile accident. To reach the home of the women employees the defendant was required to drive his car southwardly on the Springboro Pike, Montgomery county, Ohio, and to proceed over the railroad tracks of the New York Central Railroad Company. About fifty feet north of the railroad crossing there is a curve in the pike to the left which was pleaded and admitted that defendant knew. This thorofare was an asphalt highway eighteen feet wide. The amended petition especially avers that

4

"Defendant, with full knowledge of the above facts, proceeded southwardly on said pike at a wantonly reckless rate of speed of 85 miles per hour despite the fact that it was then dark and despite the warning of the occupants of said car. He knew of, saw, and attempted to make said curve above described while operating said automobile at such speed of 85 miles per hour despite the aforesaid warning, and while so attempting to make said curve his car was caused to leave the highway, turned over several times and hurled said decedent therefrom, killing him instantly."

The plaintiff claims that upon the evidence and her amended petition there were presented two theories upon which she had the right to recover, First, that plaintiff's decedent was not a guest of defendant but a passenger for consideration and that the ordinary rules of negligence apply in determining defendant's liability and Second, If, under the facts, if be found that plaintiff's decedent was a guest of defendant then the evidence established and the special verdict supported the charge of wanton misconduct against the defendant.

The claim of the defendant as set up in his answer urged in the trial and presented upon the assignments of error in this court is that the petition did not aver wanton misconduct, that the plaintiff was a guest of defendant in his automobile, that the elements of wanton misconduct are not established and that the accident was unavoidably brought about by a slow leak in the right front tire of the automobile.

Both parties requested special verdicts, the one prepared by the plaintiff conforming to her theory of the case, the one prepared by the defendant presenting factual findings conformable to his answer.

The jury returned the special finding tendered by the plaintiff and assessed the damages at $18,500.00 which the court reduced to $13,900.00 upon the acceptance of a remittitur by the plaintiff, the court finding the verdict excessive but not brought about by passion or prejudice. Counsel for defendant moved for a directed verdict at the conclusion of plaintiff's case and at the conclusion of the whole case which motions together with the motion for judgment notwithstanding the verdict were overruled, as was the motion for a new trial.

The major questions in this case are whether or not the plaintiff had the right to go to the jury on the claim that plaintiff's decedent was a passenger for compensation in the automobile of defendant and if she had not that right then, whether the testimony supported the finding of wanton misconduct against the defendant.

A determination of the first question must be made largely from circumstances.. Defendant insists that the transportation of plaintiff's decedent was purely gratuitous, done for friendship only without expectation of compensation. There is ample support for this claim in the testimony of defendant's witnesses. It does not appear that the defendant made the same promise to Angel that he did to the two young women, namely, that if they would continue to work after their usual quitting time he would take them home. We cannot find support for the statement of the jury in the special verdict that defendant directed Angel to enter his car or directed Angel to accompany defendant to his home.

On the other hand, it can be inferred from the record that it was to the interest of the defendant, but more especially his employer, that plaintiff's decedent put in as much time as he could be caused to expend in work at the nursery. This appears not only because it was essential to taking care of the emergency business that he give as many hours as possible but also to make a better showing under the business system which was in use at the plant. On the day in question, plaintiff's decedent had worked eleven and one-half hours, with thirty minutes off for lunch at noontime, when he was called upon to put in extra time. It appears that it was optional with him whether he went to the restaurant to get his evening meal or went to his own home with defendant and the actual time spent in getting to the restaurant and returning would not have been more than would have been required to go to his own home by auto. However, it would have been necessary for plaintiff's decedent to walk to the restaurant and from there to the plant which would have been approximately one-half mile. He may have been delayed beyond his thirty minute period had he lunched at the restaurant. The defendant knew that by taking plaintiff's decedent to his home he would be assured that he would arrive there and that he would have to expend little or no physical energy, that he would be available immediately upon call to return to the plant, and all in all, such plan would be to the advantage of the defendant and the nursery. This practice of taking decedent to his home and returning him to the plant had been frequently followed. In the situation thus developed, application may be given to the principle discussed by Judge Hart in the very recent opinion of **Duncan v·Hutchinson, 139 Oh St 185,** cited by both parties, wherein at page 189 it is said:

"On the other hand, where the relationship between the automobile host and a party riding with him has a business aspect and the transportation is supplied for their mutual

benefit, any payment or service rendered to the automobile host by such person for the ride will constitute 'payment therefor' and will remove the automobile host from the protection of the statute.

· "It is not necessary that payment for such transportation be made in money."

It may be said, in the most favorable interpretation of the evidence in favor of the plaintiff, that the relationship between the defendant and decedent had a business aspect and the transportation was supplied in that relationship for their mutual benefit. The service to be rendered to the host was better performance of duties, for a longer time, at some slight saving to the host or his company because it was his or its practice when decedent went to the restaurant to pay for Angel's meal.

However, if all of the foregoing be conceded the benefit accruing was to the advantage of the nursery company and only remotely and indirectly to the defendant in his individual capacity. The action is not against the nursery company. It is our judgment that, conceding the benefits which the jury had the right to find accruing by reason of Angel being transported in the automobile to his home, they do not constitute him a passenger of the defendant for compensation.

Appellant cites and comments on **Dorn, Admr. v. Village of North Olmstead, 133 Oh St 375; Voekl v Latin, Admr., 58 Oh Ap 245.** Appellee cites and comments upon **Delk v Young, 33 Abs 508; Edelstein v Kidwell, 34 Abs 566; Dorn v North Olmstead, 133 Oh St 375; Kruy v Smith, 108 Conn. 628; Garrett v Hammack, 162 Va. 42.**

### CLAIM OF WANTON MISCONDUCT.

Wanton misconduct has been the subject of much dissertation by the courts of this state since the enactment of the guest statute and there has been a marked failure of unanimity in the pronouncements of the Supreme Court as well as of the lower courts in defining and applying the term to the facts in the respective cases.

Appellant cites and comments on **Haacke v Lease, 35 Abs 381; Hottel v Read, 66 Oh Ap 323, 326; Vecchio v Vecchio, 131 Oh St 59; Universal Concrete Pipe Company v Bassett, 130 Oh St 567, 200 N. E., 843; Morrow v Hume, Admr., 131 Oh St 319, 3 N. E. (2d) 39; Akers v Stirn, 136 Oh St 245; Jenkins v Sharp, 140 Oh St 80, 82, 83; Fischer v Faflik, 52 Oh Ap 69.**

Counsel for appellee cites and comments on **Herrell v Hickok, 49 Oh Ap 347, 3 OO 245; Thomas v Foody, 54 Oh Ap 423, 8 OO 188;** and **Morrow v Hume, supra.**

The second proposition of the syllabus of **Universal Concrete Pipe Company v Bassett, 130 Oh St 568,** is a late, satisfactory and comprehensive definition of the term:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury."

In examining the facts developed on the record, we may disregard the claim of the defendant that the accident was unavoidably caused by a slow leak in his tire because the jury refused to adopt the special finding of fact supporting this defense.

The accident occurred at night after it was dark, at a curve in a highway with which the defendant was thoroughly familiar. A very short distance from the place where the accident occurred the highway crossed a railroad grade where there were eight tracks. So that the slightest prudence would have required defendant to approach these railroad crossings at a reasonable rate of speed. The road was banked at the berm between the railroad crossing and Eby Road, a pavement which came into Springboro Pike from the west, near which the Ford left the road, to the crossing, with guard rail protection from an embankment. To the south of Eby Road and connecting therewith and but a short distance from the south of the Springboro Pike was a private gravel drive.

There were five witnesses who testified for the plaintiff, all of whom fixed the speed of the automobile as it approached the curve, no one at less than sixty miles per hour and the maximum was fixed at eighty-five miles per hour. Confirmatory of this speed, one of the young women riding in defendant's automobile testified that at a distance of about two-thirds of a mile from the place of the accident, she observed the speedometer on defendant's Ford and that it registered from 80 to 85 miles an hour and she further stated that he did not slacken his speed from that time on. She also testified that at the time she observed the speedometer she touched the other young woman who was along side of her and said to her, "Look at the speedometer", in a tone of voice loud enough to be heard by anyone listening; that she was leaning

forward on the back of the front seat and that when she observed that defendant was not going to slow up she shouted to him "Jim, you had better watch that curve." The defendant admits to a speed of 60 to 65 miles per hour at or about the place where Marguerite Frazier says that the speedometer registered from 80 to 85 miles per hour. The watchman at the crossing fixes the speed of the automobile at 60 to 65 miles an hour and Eisenberger, who was along side the watchman fixes the speed at the time the automobile was at the curve at 70 to 80 miles per hour.

The engine of the automobile was heard by the railroad crossing watchman at a distance of approximately a mile north of the shanty at the railroad crossing. Dunaway in describing the course of the automobile said that when it hit the curve it missed the road, hit the guard rail and turned sideways and turned over five times, stopped fifty feet from the Springboro Pike and came to rest on its wheels. That it slid until it hit the soft dirt. It appeared further that the car broke off one post, possibly two, supporting the guard rail and Angel's body was found seventy feet beyond the place where the automobile came to rest and the circumstances were such that the jury had a right to believe that he was thrown this distance by the impact because one of the witnesses said, in substance, that at the time that he found Angel it was evident that he could not have moved to the place where found. Defendant was badly shaken up by the impact of the automobile with the posts and other objects but after being taken to the hospital, talked to police officers about the accident but made no comment whatever to the effect that it had been caused by a bad tire.

The facts in this case in our judgment bring it well within the holding of this court in **Thomas v Foody, 54 Oh Ap 423,** which judgment the Supreme Court refused to certify. The third syllabus has special application,

"Evidence establishing that the driver of a motor vehicle operated it at an excessive speed around curves in spite of remonstrances on the part of the guest, with knowledge of the existing circumstances, showed a consciousness on the part of the driver that his conduct would in all common probability result in injury to his guest, and is sufficient to show wanton misconduct within the meaning of the guest statute. §6308-6."

It is urged by appellant that the courts have said time and again that speed alone does not constitute wanton misconduct. **Morrow v Hume, Adm., 131 Oh St 319, 324; Miller v Benedict, 25 Abs 360; Akers v Stirn, 136 Oh St 245.** This must

be assumed to be correct in the abstract but in the cited case of Morrow v Hume at page 324, the opinion after reciting that,

"Wanton misconduct can never be predicated on speed alone;" (then continues) "but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness."

It is the concomitant circumstances here found which presented a factual situation upon which the jury had the right to return its special verdict and the court to determine therefrom wanton misconduct, viz; the night season, driver depending upon headlights only, curve in the road, short distance to railroad crossing, embankment, intersecting road, and guard rail along curve warning of danger, together with the inordinate speed and failure to abate it.

The second assignment of error is that court erred in its charge to the jury. Without comment we find nothing prejudicial to the rights of the defendants in the charge in the particulars to which complaint is directed. We reach the same conclusion as to the charge that plaintiff's counsel was guilty of misconduct in his argument to the jury.

The fourth and fifth errors assigned are that the damages assessed by the jury are grossly excessive and given under the influence of passion and prejudice. Plaintiff's decedent was a man forty-five years of age, presumably in good health, leaving a wife and four children, earning regularly at his occupation as propogator $20 per week and with overtime, $26 per week. He had formerly been employed as foreman on a section crew with a steel gang and on the state highway. His expectancy of life was presented to the jury by the introduction of many mortality tables. It is probable that decedent's earnings would not have decreased and on the other hand that they would have increased in the future. The judgment is fully compensatory but we cannot say that it is manifestly excessive nor that it was induced by passion and prejudice.

Complaint is made as to the charge of the court respecting mortality tables but upon this record we find no prejudicial error in this particular.

It follows from what we have said that the other errors assigned are not well made and that no error arose which prejudiced the rights of defendant in the trial of the cause.

The judgment will be affirmed and cause remanded.

BARNES, J., concurs.

GEIGER, P. J., dissents for the reason that proof fails to show wanton misconduct. See **Concrete Pipe Co. v Bassett, 130 Oh St 567; Vecchio v Vecchio, 131 Oh St 59; Thomas v Foody, 54 Oh Ap 423; Morrow v Hume, Adm., 131 Oh St 319; Haacke v Lease, 35 Abs 380.**