### Jones v. Jones.

February 14, 1950.

W. J. Baxter, Judge.

Shumate & Shumate for appellant.

Stoll, Keenon & Park and George T. Ross for appellee.

JUDGE HELM—Affirming.

Appellant, J. D. Jones, sought damages from Made-

line Jones because of injuries sustained in an automobile accident in Ohio. The trial court directed a verdict for appellee. Appellant appeals.

Appellee, Madeline Jones, is the wife of Chester Jones; Chester is a brother of appellant. Appellant and his daughter, Mrs. Lucille Cobb, lived near Richmond. Appellee and her husband, Chester, lived in Richmond. A day or two prior to December 12, 1947, appellant and his brother, Chester, received word that their aunt, Candice Adams, who lived at Amelia, Ohio, had died. Appellee invited appellant and his daughter to accompany her and her husband in her automobile from Richmond to Amelia to attend the funeral of their aunt. Appellant and his daughter accepted the invitation, and on the morning of December 12, 1947, the four of them left for Ohio, going by way of Winchester and Maysville. Before leaving, Chester said there was no need to take both cars. Appellant and Chester agreed that they would go in appellee's car. Chester, the husband and agent of appellee, drove her car. There was no agreement or understanding "regarding the expenses on this trip." At Winchester they stopped and got some gas. Appellant says, "The tank was on my side of the car. I went out and gave the attendant a $5 bill and he gave me $2.50 back."

Appellant says, "The sun was shining. There was some snow around. Seen ice in Ohio several times." It was "pretty chilly." He did not say anything to his brother about the ice. Asked how fast his brother was driving, he replied, "I wouldn't say." Asked if he was driving at an ordinary rate of speed, he answered, "I wasn't paying any attention." Then asked if in his deposition he had stated that his brother was driving at an ordinary rate of speed, he answered, "Yes, sir." He then said there was nothing out of the ordinary about his brother's driving that attracted his attention. A few miles beyond Georgetown, Ohio, as they were driving along, he says, "Don't know what happened. * * * Something happened to the car. * * * I was hit in the head and knocked unconscious." When he "woke up" he was in a hospital in Cincinnati. He admits that in a statement made later he said, "The black top road was icy and Chester, who is a very good driver, was driving carefully because of the ice at a speed of about 35 to 40

miles per hour when all of a sudden the car started to skid and left the road on the right side and turned over. * * * In my opinion this accident was simply one where a car skidded out of control and Chester Jones was no way responsible for it." Asked if he made that statement, he said, "Yes sir. I wouldn't blame the accident on nobody."

Mrs. Cobb, daughter of appellant, was in the car on the trip to Ohio. She says the weather was "very pretty but cold." She did not notice any ice on the road until they got into Ohio; saw plenty of it in Georgetown, and then "just spots of it on the road." At that time she was riding on the front seat with Chester. At the time the car swerved she did not notice ice on the highway until the car was on it. She has ridden in automobiles for about 30 years. In her opinion Chester was driving about 50 miles an hour.

Appellee was called by appellant to testify as if under cross-examination. The car belonged to her. Chester, as her husband and agent, was driving her car. She was riding on the back seat with appellant at the time of the accident. She had noticed snow and ice on the road off and on as they got into Ohio. Asked how fast they were going, she said, "We had been driving about 60 miles an hour." Asked as to how fast Chester was driving at the point of accident, she said, "He hadn't checked up very much." The car skidded several times and went off the road and turned over about four or five miles beyond Georgetown. She did not say anything to her husband about his driving. No one complained about the ice or how her husband was driving at any time. Asked by her attorney, "You don't mean to tell the jury how fast your husband was driving when the accident occurred?" she answered, "No, sir."

It appears that appellant sustained painful and permanent injuries. He sought damages in the sum of $15,000; pleads that the negligence and careless acts of appellee and her agent in operating the car "is actionable negligence in the state of Ohio." By amended petition appellant plead that the operation of appellee's automobile by her agent at the time and place of the accident "constituted wilful and wanton negligence and wilful and wanton misconduct."

The Guest Statute of Ohio is as follows: Section 6308-6, General Code. "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless said injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

Appellant maintains:

"First, the Ohio Guest Statute has no application to the relationship of the parties in this case;

"Second, even though the Ohio Guest Statute is applicable, the agent of the appellee was operating her automobile at such excessive speed and dangerous rate of speed under the circumstances present when and where the car wrecked, that his doing so amounted to wanton misconduct within the meaning of the Ohio Guest Statute;

"Third, even though the Ohio Guest Statute applies, it is against the public policy of this state to enforce its provisions."

There was no agreement or understanding between appellant and appellee regarding the expenses of the trip. The payment by appellant for gas at Winchester was on his own initiative and voluntary on his part, without any request from appellee or her husband, or agreement with them. In Voelkl v. Latin, 58 Ohio App. 245, 16 N. E. 2d 519, 524, the Ohio court, quoting from McCann v. Hoffman, 9 Cal. 2d 279, 70 P. 2d 909, said:

" 'The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. * * *' "

In Duncan v. Hutchinson, 139 Ohio St. 185, 39 N. E. 2d 140, 143, the Supreme Court of Ohio held: "By the weight of authority, the sharing of the cost of gasoline

and oil consumed on a trip taken for mutual pleasure or social purposes does not transform into a passenger one who without such exchange would be a guest, and is not 'payment' for transportation within the meaning of the Ohio Guest Statute.'' Under the facts of this case, and especially so in view of the Ohio Court's ruling in Duncan v. Hutchinson, it appears that appellant was not a passenger but a guest in appellee's car.

In Angel v. Constable, Ohio App., 57 N. E. 2d 86, 89, cited by appellant, the accident occurred at night, after it was dark, at a curve in the highway with which the defendant was thoroughly familiar. A very short distance from the place where the accident occurred, the highway crossed a railroad grade where there were eight tracks. The defendant admitted a speed of at least 60 to 65 miles per hour; a guest said the speedometer registered from 80 to 85 miles per hour. His speed was not abated despite his guests' warnings. Witnesses at the crossing estimated the speed at from 60 to 80 miles per hour. A witness, describing the course of the automobile, said that when it hit the curve it missed the road, hit the guard rail, turned sideways, and turned over five times. It was held this evidence was sufficient to take the case to the jury on the ground of wanton misconduct within the meaning of the guest act. There the Ohio Court said:

''* * * Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.''

* * * * * *

'' 'Wantonness can never be predicated on speed alone;' * * * 'but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and know-

ing disregard of another's safety may amount to wantonness.' ''

In this case, the speed of the automobile is not shown. Mrs. Cobb estimated the speed at 50 miles per hour. Appellee, whose counsel charges her with being a willing witness for appellant, finally said that she did not mean to tell the jury how fast her husband was driving. Appellant admitted saying that his brother, Chester, was a very good driver, was driving carefully, and at a speed of about 35 to 40 miles per hour at the time of the accident. On the basis of this testimony, we are unable to say that the trial court erred in directing a verdict for appellee.

The accident complained of occurred in Ohio. Suit was filed in Kentucky. The law of the forum where the accident occurred applies.

The judgment is affirmed.